IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| v. | : | **CRIMINAL NUMBER 22-456** |
| | : | |
| | : | |
| **ERIC ALLEN** | : | |

**MOTION TO DISMISS INDICTMENT**

Eric Allen, through counsel, moves to dismiss the indictment because the statute under which he is charged, 18 U.S.C. § 922(g)(1), is unconstitutional both on its face and as applied to him following *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), and *Range v. Attorney General.*, 69 F.4th 96 (3d Cir. 2023) (en banc). In support, he states as follows:

I.  **INTRODUCTION**

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2131 (2022), the Supreme Court set forth a text-and-history approach for considering Second Amendment challenges: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the government "must then justify its regulation by demonstrating that it is consistent with the nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2131 (2022). Applying that framework, in *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 101 (3d Cir. 2023), the *en banc* Third Circuit concluded that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to Mr. Range, an individual with a prior false statement conviction. In so holding, the Third Circuit rejected every piece of historical evidence identified by the government,

concluding that the government had not pointed to any regulation that was sufficiently similar to Section 922(g)(1)'s permanent disarmament of individuals like Mr. Range.

In this case, the government has indicted Mr. Allen for possession of a firearm based a prior conviction carrying a firearm without a license. As the Third Circuit made clear in *Range*, the Second Amendment covers Mr. Allen and his possession of a firearm, and it is the government's burden to demonstrate that permanent disarmament of Mr. Allen is consistent with the nation's historical tradition of firearm regulation. The government will not be able to meet its burden here. Indeed, *Range* specifically rejected all the historical arguments that the government has so far marshaled in *Bruen*'s wake to defend its claimed power to forever disarm all Americans convicted of felonies and even certain misdemeanors. At least as applied to Mr. Allen, therefore, Section 922(g)(1) flunks *Bruen's* text-and-history test.

The Court could stop there. But the indictment also fails because Section 922(g)(1) is unconstitutional on its face; not just when applied to people like Mr. Range or Mr. Allen. That is so for three reasons:

First, as has become clear since *Bruen*, Section 922(g)(1) runs afoul of the Second Amendment when applied to *anyone*, regardless of their criminal history. That's because the statute's prohibition on felons possessing handguns is a modern innovation with no pre-twentieth-century analogue. And that means the government will never be able, in this or any case, to point to any founding-era history of broadly and permanently disarming people convicted of felonies. Nor will the government be able to point to any historical tradition of attaching penal consequences as severe as those provided by Section 922(g) for a purely possessory offense.

Second, and alternatively, if the Court believes that certain criminal convictions could, in theory, justify disarmament under *Bruen*'s framework, Section 922(g)(1) would then be void for vagueness—and thus still facially unconstitutional. That is, the statute criminalizes a great deal of conduct that is constitutionally protected, but without notice of where to draw the constitutional line. Because Section 922(g)(1) fails to give ordinary people fair warning of what conduct is subject to punishment, it is unconstitutionally vague.

Finally, though presently foreclosed by precedent, Mr. Allen asserts for preservation purposes that Section 922(g)(1) is also inconsistent with the original public meaning of the Constitution's Commerce Clause—as alluded to by Judge Porter's concurring opinion in *Range*.

Under a faithful application of *Bruen, Range*, and the Second Amendment, Mr. Allen's indictment must be dismissed.

## II.     BACKGROUND

Eric Allen is charged in an indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and 924(e), and possession of a machinegun in violation of 18 U.S.C. §922(o). The government alleges that on April 30, 2023, two guns were recovered from a vehicle possessed by Mr. Allen. On December 8, 2022, the grand jury returned a two-count indictment charging Mr. Allen with a violation of 18 U.S.C. 922(g)(1) and 922(o), knowing possession of a firearm after a felony conviction and possession of a machinegun.

## III.    ARGUMENT

### A.  Section 922(g)(1) is unconstitutional as applied to Mr. Allen.

The Second Amendment protects the right of "the people" to "keep and bear Arms." U.S. Const. amend. II. Section 922(g)(1), however, makes it unlawful for "any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one

3

year" to "possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1).[1] As the Third Circuit recently made clear, Mr. Allen is a member of "the people," and the conduct proscribed by Section 922(g)(1) is protected by the Second Amendment. *Range*, 69 F.4th at 103. The government therefore bears the burden to establish a robust tradition of founding-era firearm regulation sufficiently similar to Section 922(g)(1). *Bruen*, 142 S. Ct. at 2131, 2136. But, as the Third Circuit's recent en banc decision in *Range* reflects, the government will not be able to identify a longstanding historical tradition of disarming "people like" Mr. Allen. *Range*, 69 F.4th at 106. The indictment must be dismissed.

      i.      ***Bruen*** **held that the Second Amendment requires a text-and-history approach.**

In *Bruen*, the Supreme Court rejected the means-end scrutiny that lower courts had previously applied in Second Amendment cases. Instead, the Supreme Court held that the Second Amendment requires a text-and-history analysis. As the Third Circuit recently explained, "[a]fter *Bruen*, we must first decide whether the text of the Second Amendment applies to a person and his proposed conduct." *Range,* 69 F.4th at 101. "If it does, the government now bears the burden of proof: it 'must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Id.* (quoting *Bruen*, 142 S. Ct. at 2127). "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Bruen*, 142 S. Ct. at 2126 (internal quotation marks omitted).

---

[1] The prohibition reaches offenses graded as misdemeanors under Pennsylvania law that are punishable by more than two years. See 18 U.S.C. § 921(a)(20)(B).

### ii. The plain text of the Second Amendment covers Mr. Allen and the conduct criminalized by Section 922(g)(1).

The threshold question under *Bruen* is "whether the text of the Second Amendment applies to a person and his proposed conduct." *Range*, 69 F.4th at 101. *Range* settles that question for this case. Mr. Allen is, like all Americans, one of the "the people" whom the Second Amendment protects. *Id.* at 101-03. Further, the conduct prohibited by Section 922(g)(1)—possession of a firearm—falls squarely within the heartland of the Second Amendment. *See id.* at 103. As a result, "the Constitution presumptively protects that conduct." *Id.*

### iii. The government will not be able to prove that Section 922(g)(1)'s application to Mr. Allen is consistent with this Nation's historical tradition of firearm regulation.

Because the Second Amendment covers Mr. Allen and the conduct barred by Section 922(g)(1), the government has the burden to "affirmatively prove" that 922(g)(1)'s application to Mr. Allen "'is consistent with the Nation's historical tradition of firearm regulation.'" *Range*, 69 F.4th at 96, 101. In other words, "[t]o preclude [Mr. Allen] from possessing firearms, the [g]overnment must show that § 922(g)(1), as applied to him, is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 103 (internal quotation marks omitted). The government will not be able to do so.

To establish that a law is "consistent with the Nation's historical tradition of firearm regulation," *Bruen*, 142 S. Ct. at 2130, the government must prove one of two things, depending on whether the problem addressed by the law is old or new. On one hand, if "a challenged regulation addresses a general societal problem that has persisted since the 18th century," the government must identify a tradition of "distinctly similar" founding-era regulations. *Id.* at 2131; *see also Range*, 69 F.4th at 103. On the other hand, if a regulation addresses a problem that was "unimaginable at the founding," the government may instead "reason[] by analogy" and prove

that the regulation is "relevantly similar" to founding-era historical analogues. *Bruen*, 142 S. Ct. at 2132; *see also Range*, 69 F.4th at 103. The "central considerations" in deciding whether a modern regulation is "relevantly similar" to a historical analogue are "whether modern and historical regulations impose a comparable burden on the right of armed self-defense [*i.e.,* the 'how'] and whether that burden is comparably justified [*i.e.,* the 'why']." *Bruen*, 142 S. Ct. at 2132-33; *see also Range*, 69 F.4th at 103.

Because Section 922(g)(1) does not address a problem that was unimaginable at the founding, the government bears the burden to identify *distinctly* similar founding-era regulations. But regardless of which burden it bears, the government will not be able to identify any tradition of firearm regulation similar to Section 922(g)(1)'s application to Mr. Allen here. The Third Circuit in *Range* carefully considered and rejected all the historical evidence that has been relied on by the government in other post-*Bruen* litigation to date. To take just one example, *Range* concluded the government could not rely on status-based restrictions on the possession of weapons by certain historically disfavored groups like Catholics and native American peoples because "any such analogy would be 'far too broad.'" 69 F.4th at 105 (quoting *Bruen*, 142 S. Ct. at 2134). So, unless the government can come forward with new historical evidence of an as-of-yet undiscovered tradition of disarming "people like Mr. Allen," *Range*, 69 F.4th at 106, Section 922(g)(1) cannot be constitutionally applied to Mr. Allen. *See, e.g., United States v. Bullock*, No. 3:18-CR-165-CWR-FKB, 2023 WL 4232309, at *30 (S.D. Miss. June 28, 2023) (dismissing an indictment against a prior felon and noting that the government did not present "any example of how American history supports § 922(g)(1), much less the number of examples *Bruen* requires to constitute a well-established tradition."). The Court should grant this motion and dismiss the indictment with prejudice.

6

    **B.    Section 922(g)(1) is facially unconstitutional.**

Although the Court could confine its analysis to the statute's constitutionality "as applied" to people like Mr. Allen, Section 922(g)(1) is also unconstitutional on its face.

    **i.    Section 922(g)(1) is unconstitutional under the Second Amendment in all its applications.**

In *Range*, the appellant raised only an "as applied" challenge to Section 922(g)(1), and the Third Circuit had no occasion to consider whether the statute is facially unconstitutional. *Range*, 69 F.4th at 100. But a faithful application of *Bruen* and *Range* compels the conclusion that Section 922(g)(1) is unconstitutional on its face. As discussed above, because the Second Amendment's text covers the conduct proscribed by Section 922(g)(1), the government bears the burden of establishing a founding-era tradition of disarming individuals with felony convictions. *Id.* at 101. The government has already shown that it will be unable to do so. Put simply, "there are *no* examples of founding, antebellum, or Reconstruction-era federal laws like 18 U.S.C. § 922(g)(1) permanently disarming non-capital criminals." *Range*, 69 F.4th at 106 (Porter, J., concurring) (emphasis added); *see also*, *e.g.*, *Binderup v. Attorney General*, 836 F.3d 336, 368 (3d Cir. 2016) (Hardiman, J., concurring, joined by Fisher, Chagares, Jordan, and Nygaard, JJ.) ("[T]he Founding generation had no laws denying the right to keep and bear arms to people convicted of crimes[.]") (original alteration marks and citation omitted).

Because there is no founding-era history of disarming people convicted of felonies at all, Section 922(g)(1) "is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008). The history will not change from case-to-case. *See Range*, 69 F.4th at 116 & n.5 (Shwartz, J., dissenting, joined by Restrepo, J.) (stating that majority's approach "rejects all historical support for disarming any felon," dictating conclusion that "bans on violent felons cannot be justified"). And while *Bruen* may not demand a

"historical twin" for Section 922(g)(1), *see* 142 S. Ct. at 2133, the government has yet to find so much as a long-lost cousin. This Court should recognize that reality and hold that the statute is unconstitutional on its face.

### ii. Section 922(g)(1) is unconstitutionally vague.

If this Court were to conclude (notwithstanding the above) that Section 922(g)(1) is not unconstitutional in all applications, the statute then runs into another fatal constitutional flaw: vagueness. After *Range*, Section 922(g)(1) can no longer criminalize much of the conduct it purports to outlaw. Indeed, it must now be recognized that there are numerous Americans who fall within the text of the statute because they have previously been convicted of "a crime punishable by imprisonment for a term exceeding one year," but who cannot be disarmed consistent with the Second Amendment. *See Range*, 69 F.4th at 133 (Krause, J., dissenting) ("Under the majority's 'like Range' test … offenders cannot possibly know in advance of a court's retroactive declaration whether possessing a firearm post-conviction is a constitutional entitlement or a federal felony. As interpreted today by the majority, § 922(g)(1) is rendered so vague as to be facially unconstitutional.").

"In our constitutional order, a vague law is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019). The Constitution requires that federal criminal laws "give ordinary people fair warning about what the law demands of them." *Id.* Section 922(g)(1) does not, because it criminalizes reams of constitutionally protected conduct alongside whatever conduct might arguably be unprotected while providing no guidance for discerning which is which. Where can "ordinary people" with a past criminal conviction look for a "sure way to know" if possessing a gun will expose them to criminal punishment? *Id.* Not to the statute's text: *Bruen* and *Range* make clear that the statute cannot constitutionally be applied as written. Case law likewise provides no guidance: insofar as § 922(g)(1) is not facially unconstitutional, *Range* requires

8

courts to engage in case-by-case, crime-by-crime reasoning to determine whether the person before them is "like Range." *Range*, 69 F.4th at 106.

The consequence is straightforward: The Court must "treat [Section 922(g)(1)] as a nullity and invite Congress to try again." *Davis*, 139 S. Ct. at 2323.

### iii. The Supreme Court should revisit its post-New Deal precedent straying from the Commerce Clause's original public meaning.

Finally, as Judge Porter's concurrence in *Range* suggests, the federal government's claimed authority to regulate guns depends on an expansive view of Congress's Commerce Clause power that has little to do with commerce and was largely invented by courts in the post-New Deal era. *See Range,* 69 F.4th at 107-09 (Porter, J. concurring). Admittedly, the Supreme Court's New Deal precedents and their progeny continue to foreclose this Court from second-guessing these decisions' broad view of Congress's power to regulate commerce. *See, e.g., NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937). But the Supreme Court has, in more recent decades, gestured toward a more restrained approach. *See, e.g., United States v. Lopez*, 514 U.S. 549 (1995); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 552 (2012); *see also Alderman v. United States*, 131 S. Ct. 700, 701 (2011) (Thomas, J., joined by Scalia, J., dissenting from denial of certiorari) (urging reconsideration of 1977 decision upholding Congress's authority under Commerce Clause to enact precursor of Section 922(g)). Because the Supreme Court could one day "temper" its post-New Deal precedent, Mr. Allen asserts for preservation purposes that Section 922(g)(1) is inconsistent with the original public meaning of the Constitution's Commerce Clause. *Lopez*, 514 U.S. at 584-85 (Thomas, J. concurring); *see also Range,* 69 F.4th at 107-09 (Porter, J. concurring).

IV.     **CONCLUSION**

For the foregoing reasons, the indictment of Mr. Allen should be dismissed in full.

                                  Respectfully submitted,

                                  */s/ Catherine C. Henry*
                                  CATHERINE C. HENRY
                                  Senior Litigator

## CERTIFICATE OF SERVICE

I, Catherine C. Henry, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have electronically served a copy of the Defendant's Motion to Dismiss the Indictment via the Eastern District Clerk's Office Electronic Case Filing notification upon Shannon G. Zabel, Assistant United States Attorney, Suite 1250 - United States Attorney's Office, 615 Chestnut Street, Philadelphia, Pennsylvania 19106.

/s/ *Catherine C. Henry*
CATHERINE C. HENRY
Senior Litigator

DATE:     August 21, 2023

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | CRIMINAL NUMBER 22-456 |
| | : | |
| | : | |
| ERIC ALLEN | : | |

**O R D E R**

**AND NOW**, this _____ day of _____, 2023, upon consideration of the Defendant's Motion to Dismiss Indictment, and the government's response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**. It is **ORDERED** that Indictment No. 22-456 is **DISMISSED**.

BY THE COURT:

_____
**THE HONORABLE MITCHELL S. GOLDBERG**
United States District Court Judge