IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>    v.<br><br>ERIC ALLEN,<br><br>    *Defendant.* | Criminal Action<br><br>No. 22-cr-456 |

**MEMORANDUM OPINION**

**GOLDBERG, J.**                                     December 15, 2023

  A grand jury has brought multiple federal gun charges against Defendant Eric Allen, including Count 1 pursuant to 18 U.S.C. § 922(g)(1), which makes it unlawful for individuals convicted of certain crimes to possess firearms in interstate commerce. Relying on the recent case of Range v. Attorney General, 69 F.4th 96 (3d Cir. June 6, 2023), Allen has moved to dismiss that count, arguing that § 922(g)(1) is unconstitutional both on its face and as applied to him. For the reasons set out below, Allen's motion will be denied.

**I.  RELEVANT BACKGROUND**

  On December 8, 2022, Allen was charged by indictment with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and possession of a machinegun in violation of 18 U.S.C. § 922(o). These offenses stem from Allen's April 30, 2022, arrest wherein police recovered multiple firearms alleged to be in Allen's possession. Allen was prohibited from possessing these weapons under § 922(g)(1) due to his prior convictions for possessing a firearm in a car without a concealed carry permit, 18 Pa. Cons. Stat. § 6106, and receiving stolen property, 18 Pa. Cons. Stat.

1

§ 3925. These prior crimes were punishable by up to seven and ten years, respectively, thus triggering the prohibition of § 922(g)(1) ("It shall be unlawful for any person[] who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess . . . any firearm [subject to various interstate commerce requirements].").

Allen asserts that § 922(g)(1) is unconstitutional and therefore invalid both on its face and as applied to him. He bases this argument on Range, where the United States Court of Appeals for the Third Circuit, sitting en banc, found § 922(g)(1) unconstitutional as applied to the plaintiff in that case, a felon convicted of misrepresenting his income on a form for food stamps. The Third Circuit reasoned that Range's right to possess a firearm was protected because the Government had not shown that the nation's historical tradition of firearms regulation supported depriving "people like Range" of his Second Amendment right. Range, 69 F.4th at 106.

## II.     DISCUSSION

The Supreme Court's recent Second Amendment jurisprudence begins with District of Columbia v. Heller, which found a ban on handguns in the District of Columbia to be unconstitutional. 554 U.S. 570, 635 (2008). Heller explained that the Second Amendment protects an individual right to possess a firearm even if not part of "militia" service, but also clarified that this right is "not unlimited." Id. at 626. Specifically, "the right [to bear arms] [is] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. The Heller Court went on to add that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id. at 626-27.

More recently, the Supreme Court elaborated on the individual right to bear arms in New York State Rifle & Pistol Association v. Bruen, 142 S. Ct. 2111 (2022). There, the Court held unconstitutional a state law requiring individuals to "demonstrate[] a special need for self-defense" in order to carry a handgun in public. Id. at 2122. In doing so, the Court explained that so-called "means-end scrutiny"—i.e., balancing the strength of the government's interest in regulating against the strength of the individual right infringed—was not a proper analysis in the Second Amendment context. Id. at 2127. Instead, the Court clarified that where the Second Amendment covers an individual's conduct, the government cannot prohibit that conduct except in a manner consistent with "the historical tradition that delimits the outer bounds of the right to keep and bear arms." Id. In his concurrence, Justice Kavanaugh, joined by Chief Justice Roberts, reiterated Heller's statement that prohibitions on the possession of firearms by felons remained "presumptively lawful regulatory measures." Id. at 2162.

Shortly after Bruen, the Third Circuit issued its en banc opinion in Range. 69 F.4th 96. There, Range brought a declaratory judgment action seeking to establish that § 922(g)(1) was unconstitutional as applied to him. Id. Range was within § 922(g)(1)'s prohibition as he was previously convicted of making a false statement to obtain food stamps, in violation of 62 Pa. Stat. § 481(a). Applying Bruen, the Third Circuit explained that a firearm regulation violates the Second Amendment if: (1) the text of the Second Amendment applies to the person and the conduct to be regulated, and (2) the Government fails to "affirmatively prove that its firearm regulation is part of the historic tradition that delimits the outer bounds of the right to keep and bear arms." Range, 69 F.4th at 101 (citing Bruen, 142 S. Ct. at 2127). After determining that Range was one of "the people" entitled to Second Amendment protection, the Third Circuit found that the Government failed to meet its burden of demonstrating that § 922(g)(1), as applied to Range, was "consistent

3

with the Nation's historic tradition of firearm regulation." Range, 69 F.4th at 101-03. In so holding, the court acknowledged that Heller did not "cast doubt on longstanding prohibitions on the possession of firearms by felons." The court also referenced Justice Kavanaugh's concurrence in Bruen, which reiterated that felon in possession laws are "presumptively lawful." Id. at 103-04. However, the Third Circuit nonetheless found § 922(g)(1) unconstitutional as applied to "people like Range." Id. at 106.

Applying Range to the present case, the challenged regulation, § 922(g)(1), is unconstitutional if: (1) the text of the Second Amendment applies to Allen and the conduct to be regulated; and (2) the Government fails to "affirmatively prove that its firearm regulation is part of the historic tradition that delimits the outer bounds of the right to keep and bear arms." Range, 69 F.4th at 101 (citing Bruen, 142 S. Ct. at 2127). The parties disagree on the application of both elements.

As to the first element, Allen claims that he, as an American citizen, is one of "the people," and his possession of a firearm "falls squarely within the heartland of the Second Amendment." (Def.'s Mot. at 5, ECF No. 25). The Government responds that the Second Amendment does not apply to Allen's conduct for various reasons: (a) Allen did not possess the gun for a lawful purpose, (b) the Second Amendment does not protect the type of firearm he possessed, and (c) he was on probation at the time of the instant offense.

Regarding the second element, Allen claims that the Government cannot affirmatively prove that § 922(g)(1), as applied to him, is consistent with the nation's historic tradition of firearm regulation. (Def.'s Mot. at 5, ECF No. 25.) In response, the Government points to multiple historic laws that it claims demonstrate that prohibiting Allen's possession of a firearm is consistent with

4

historical practice and is therefore permitted under the Second Amendment. (Resp. in Opp'n at 13, ECF No. 26.)

Finally, Allen argues that § 922(g)(1) is unconstitutional on its face, in part because it is unconstitutionally vague, which the Government disagrees with.

The conundrum in deciding this motion is that trial courts are typically not asked to examine, as Bruen suggests, "historical traditions" that may have led to a statute's passage. But in attempting to follow Bruen and Range, I find that the nation's historical tradition of firearms regulation supports depriving Allen of his Second Amendment rights. Because § 922(g)(1) is a valid restriction on Allen's conduct, I need not address whether that conduct was protected by the Second Amendment.

### A.     As-Applied Challenge

In addressing Allen's as-applied challenge, the Government first relies on the alleged facts regarding the types of guns Allen owned, the initial reason police were called, and other circumstances surrounding his arrest. (Resp. in Opp'n at 1-2, ECF No. 26.)[1] But, the Government does not explain why it is appropriate to consider these facts in connection with Range's instruction to evaluate the challenged regulation in light of historical practice. And the Range decision does not at all specify that an examination of the underlying facts that lead to the § 922(g)(1) charges should be part of the Second Amendment inquiry.[2] As such, the only facts I will consider are Allen's prior convictions and the allegation that he was in possession of a gun.

---

[1] Allen does not address these facts other than to say that "[t]he government alleges that . . . two guns were recovered from a vehicle possessed by Mr. Allen." (Def.'s Mot. at 3, ECF No. 25.)

[2] The Government also does not explain how facts that would not require proof before a jury may be considered consistent with the Sixth Amendment. See Apprendi v. New Jersey, 530 U.S. 466, 476 (2000).

In searching the historical record, the Government must establish that § 922(g)(1), as applied to Allen, "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Range, 69 F.4th at 103 (quoting Bruen, 142 S. Ct. at 2127). To show that stripping Allen of his right to keep and bear arms was consistent with the nation's historical tradition, the Government needs to identify a regulation that is "a well-established and representative historical analog" that was "relevantly similar" to § 922(g)(1) as applied to Allen. Range, 69 F.4th at 103 (internal quotation marks omitted, emphasis in original).

In analyzing § 922(g)(1) as applied to Allen's prior conviction—possession of a firearm in a car without a concealed-carry permit—the Government offers what it claims are multiple examples of founding-era (and earlier) regulations that stripped firearms from those deemed to be dangerous. An English statute empowered the government to "seize all arms in the custody or possession of any person . . . judge[d] dangerous to the Peace of the Kingdom." Militia Act 1662, 13 & 14 Car. 2, c. 3, § 13.[3] A law from colonial Massachusetts empowered justices of the peace to "seize and take away [the] armour or weapons" of "affrayers, rioters, disturbers or breakers of the peace," among others. An Act for the Punishing of Criminal Offenders (1692), ch. 11, § 6, reprinted in The Charters and General Laws of the Colony and Province of Massachusetts Bay 237, 240 (T. B. Wait & Co. 1814).[4] Similarly, A New Jersey law empowered officials to "take from such Persons as they shall judge disaffected and dangerous to the present Government, all the Arms, Accoutrements and Ammunition which they own or possess." Act for Constituting a

---

[3] The Government also asserts that the "[t]he use of that [this] statute 'continued unabated' after the adoption of the 1689 English Bill of Rights, which expressly guaranteed the right to keep and bear arms." (Resp. in Opp'n at 15, ECF No. 26 (quoting Diarmuid F. O'Scannlain, Glorious Revolution to American Revolution: The English Origin of the Right to Keep and Bear Arms, 95 Notre Dame L. Rev. 397, 405 (2019)).)

[4] While the Second Amendment did not apply to states at the time of the founding, Massachusetts independently protected "a right to keep and bear arms . . . ." 1780 Mass. Const. Pt. 1, Art. XVII.

Council of Safety, ch. 40, § 20, 1777 N.J. Laws 90. These statutes demonstrate that "dangerousness" of some form has long been considered sufficient ground for depriving a person of their right to keep and bear arms.

Although the above historical examples removed guns from people determined to be dangerous, that determination was made on an individual basis. See Militia Act 1662, 13 & 14 Car. 2, c. 3, § 13 (authorizing a "Lieutenant or any two or more of their deputies" to judge who is "dangerous to the Peace of the Kingdom"). By contrast, § 922(g)(1) applies equally to all felons without an individual determination of which felons are dangerous. That is, while the Government's proffered analogs would put the question of dangerousness to a factfinder, § 922(g)(1) reflects, in essence, a Congressional determination that anyone who has committed certain predicate crimes—here, violating 18 Pa. Cons. Stat. § 6106—is dangerous. In determining whether this difference is too significant to consider these regulations as analogs, Range directs courts to examine "how and why the regulations burden a law-abiding citizen's right to armed self-defense." 69 F.4th at 103 (emphasis added).

I begin with "why" legislatures burden the Second Amendment right. Legislatures regulate concealed weapons to protect the public, and one way they achieve this is by requiring a license. See Construction and Application of State Statutes and Local Ordinances Regulating Licenses or Permits to Carry Concealed Weapons, 12 A.L.R.7th 4, 1. In enacting 18 Pa. Cons. Stat. § 6106, the Pennsylvania Legislature apparently determined that a person who obtains and conceals a gun must have a license to do so, and noncompliance poses a danger to the public. See Commonwealth v. Scarborough, 89 A.3d 679, 687 (Pa. Super. Ct. 2014) (noting the "danger" associated with unlicensed concealed carry). In enacting § 922(g)(1), Congress therefore acted reasonably in determining, in effect, that a person who carried a concealed firearm in disregard of Pennsylvania

7

law was dangerous if armed. Because both § 922(g)(1), as applied to Allen, and the historic analogs cited above are concerned with preventing dangerous people from possessing firearms, the regulations burden a law-abiding citizen's right for the same reason.

I next consider "how" § 922(g)(1) burdens the right to bear arms, which differs from historic practice. In the historic analogs cited above, a government official (such as the "Lieutenant") would determine that an individual was dangerous on a case-by-case basis. Section 922(g)(1), by contrast, defines an entire class of people as dangerous. But the fact that legislatures of earlier eras left judges to determine dangerousness on a case-by-case basis does not prevent legislatures today from providing more guidance. Neither under § 922(g)(1) nor under historic practice was the dangerousness determination submitted to a jury, and both reflect reasonable legislative judgments about the best way to determine dangerousness. The search for a historic analog is not a search for a historic twin, and I do not find this distinction to be so different as to make it non-analogous to historic practice. See Range, 69 F.4th at 103.

The conclusion that Congress retains some leeway to determine dangerousness on a classwide basis is supported by the Supreme Court's decision in District of Columbia v. Heller, where the Court noted that its opinion should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms[.]" 554 U.S. at 626-27 & n.26; see also Bruen, 142 S. Ct. at 2162 (Kavanaugh, J., concurring). While this statement may not be controlling, it is noteworthy that all three categories identified by the Court as restricting Second Amendment rights have one uniting theme: they concern the Government's ability to prevent dangerous people from carrying guns in dangerous ways. This principle supports the conclusion

that § 922(g)(1) is constitutional as applied to someone who, like Allen, has violated a law meant to protect the public from the dangerous misuse of guns.

Finally, the conclusion that § 922(g)(1) is constitutional as applied to Allen is consistent with the "narrow" holding in Range that not all felons may have their ability to own firearms removed based solely on their felony status. 69 F.4th at 106. Range's qualifying offense was making a false statement to obtain food stamps in violation of Pennsylvania law, and the Range court held that § 922(g)(1) could not constitutionally apply to someone "like Range." Id. at 98. Allen is not like Range because his predicate conviction indicates dangerousness. The Pennsylvania legislature was apparently concerned with the dangerous use of firearms when it prohibited individuals from carrying concealed firearms without a license. Scarborough, 89 A.3d at 687 (noting the "danger" associated with unlicensed concealed carry). In contrast, in Range's case, the legislature could not plausibly have been concerned with dangerousness when it prohibited lying on a welfare form. As such, § 922(g)(1) applied to Range's conduct was not analogous to the early English and colonial laws stripping the right to bear arms from those deemed dangerous. See Range, 69 F.4th at 109-10 (Ambro, J., concurring) ("That Range does not conceivably pose such a threat says nothing about those who do."); United States v. Pearson, No. 22-cr-271, 2023 U.S. Dist. LEXIS 170034, *7 (E.D. Pa Sept. 25, 2023) (rejecting an as-applied challenge to § 922(g)(1) where the predicate offense was drug trafficking). As applied to Allen in this case, I find § 922(g)(1) to be constitutional.

**B. Facial Challenge**

Allen also challenges § 922(g)(1) on its face. "A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" United States v. Mitchell, 652 F.3d 387, 405 (3d Cir. 2011) (en banc) (quoting United States v. Salerno, 481

U.S. 739, 745 (1987)). Allen cannot establish that there are no circumstances in which § 922(g)(1) would be valid because it is valid in at least one instance—as applied to him.

Allen nevertheless argues that, in view of Range, § 922(g)(1) is "unconstitutionally vague" because it fails to "give ordinary people fair warning about what the law demands of them." (Def.'s Mot. at 8, ECF No. 25 (quoting United States v. Davis, 139 S. Ct. 2319, 2323 (2019)).) In other words, a felon interested in owning a gun would have to complete the constitutional analysis described in Range to determine if such conduct was permissible. Allen asserts that this analysis is difficult and would not provide a clear answer, which would leave a felon unsure if they are prohibited from owning a firearm.

Notably, Allen does not contend that § 922(g)(1) is unconstitutionally vague as written. Rather, Allen argues that once courts have struck down parts of § 922(g)(1), the parts that remain are so ill-defined as to be unconstitutionally vague. Allen does not cite a case in which a statute was found unconstitutionally vague simply because parts of it might be subject to as-applied challenges. Instead, he relies on United States v. Davis, which found the challenged statute unconstitutionally vague as written. 139 S. Ct. at 2324. Courts have a long-standing, uninterrupted history of considering as-applied challenges to otherwise valid statutes, which necessarily make it more difficult to determine whether conduct is punishable. See, e.g., Yazoo & M. v. R. Co. v. Jackson Vinger Co., 226 U.S. 217, 219-20 (1912) (finding that a state statute imposing a penalty for failing to settle a claim was not unconstitutional as applied to the facts of the case). Allowing such a complication to invalidate the statute on its face would call into question the very ability of courts to permit constitutionally mandated exceptions to otherwise valid laws: if a court, in any instance, found that some conduct was constitutionally permitted despite being prohibited by the statute, an individual would have to factor in the as-applied constitutional test to determine whether

the conduct was illegal. See Ayotte v. Planned Parenthood, 546 U.S. 320, 326 (2006) (vacating a district court opinion finding an act unconstitutional on its face even though it was unconstitutional if applied "in a manner that subjects minors to significant health risks"). Allen cites no authority that this complication has ever been held to raise a vagueness problem. I therefore conclude that § 922(g)(1) is not unconstitutionally vague.[5]

### III. CONCLUSION

For the reasons set out above, the motion to dismiss the indictment will be denied.

An appropriate order follows.

---

[5] At least one district court case from the Third Circuit has held that § 922(g)(1) is unconstitutional as applied to a person convicted of a prior drug-trafficking offense because the court did not view laws disarming people based on a case-by-case dangerousness determination as analogous to a law that deems entire categories of felons dangerous. United States v. Quailes, No. 21-cr-176, 2023 U.S. Dist. LEXIS 147657, at *34 (M.D. Pa. Aug. 22, 2023). In my view, the Government's historical examples are still analogous despite this difference. Bruen directs courts to look for historical "analogs" rather than "twins," and Congress therefore has flexibility in choosing how courts should assess which individuals are too "dangerous" to possess guns. Where, as here, Congress has exercised that flexibility reasonably, the regulation is consistent with historic practice.